Judge Owsley
delivered the opinion of the court.*
This is a contest for land under adverse interfering claims.
Calhoon, the complainant in the court below, having ob *167 tained a decree, Banta. &c. brought the case to this court; and because Darland, who answered as guardian for Tiny Banta, an infant heir, appeared not to have been appointed guardian ad litem by the court, the decree of that court was reversed.
Before appointing a guardian to defend for an infant, it is not necessary to bring the infant before the court.
Upon the return of the cause to the court below, an order was made assigning William Jones guardian to defend for the infant Tiny Banta.
Several orders preparatory to a trial having been there made by consent of the parties, the cause was continued; and at a subsequent term, without any answer filed by the guardian, Jones, and without any objections by either party, the cause came on to a final hearing, and a decree was again pronounced in favor of Calhoon, compelling the Bantas to surrender their elder title.
From that decree they have again appealed to this court.
The assignment of errors not only controvert the decree upon the merits, but question the regularity of the proceedings in relation to the infant heir.
It is contended, that without previously causing the infant to be brought into court, it was irregular to appoint a guardian; and that after the appointment, the guardian should have been compelled to answer before a hearing of the cause.
We are, however, unable to perceive the necessity for bringing the infant into court. It cannot have been necessary to enable the court to ascertain the fact of infancy, for that might be done by the examination of witnesses. It cannot have been necessary to authorise the court to appoint the guardian, for as, upon the supposition of infancy, the cause could not be regularly heard without a guardian ad litem appointed by the court, from the pending of the suit an authority to appoint must have resulted as a necessary consequence: and it cannot have been necessary to cause the infant to be brought into court, that he might select a suitable person to defend for him, for in many cases the imbecility of infants would preclude such a selection, and we have discovered no case where the infant has been required to choose such a guardian, but in every case the appointment appears either to have been made by the court itself, or according to the English practice, in some instances, by commissioners specially authorised by the court for that purpose.
We are aware that by the English practice it is usual to *168 cause the infant to be brought into court, but that it is not always done is plainly demonstrable from the circumstance of a guardian being, in some instances, assigned the infant by commissioners appointed by the court. But if the universal practice of that country required it, still we should not consider, the courts of this country under an imperious necessity of causing the infant to be brought into court. Rules of propriety established by the adjudications of the courts of that country should certainly be regarded by the courts here; but the same reason does not require that in points of practice no innovation should be made. And in the case now under consideration, we have the less hesitation in departing from the practice of the courts of that country, from the consideration that, in all the courts of this country, as well those of the lowest as those of most extensive jurisdiction, ever since the establishment of the government, a different practice is believed to have invariably prevailed.
Rules of propriety established by the English courts should be regarded by the courts of this country; not so as it relates to rules of practice.
If the guardian appears and takes on himself that character, be cause may be heard without his answer—he is responsible to the infant if he neglects the defence.
It is not necessary, if the guardian appears, what process should be served on the infant.
We are also of opinion that it was not irregular to hear the cause without causing Jones, the guardian, to answer.
It is obvious from the record, that the guardian, after his appointment, by appearing and consenting to the orders made, preparatory to the hearing of the cause, assumed up on himself the management of the cause for the infant:—He consequently became responsible to the infant for a faithful performance of his trust.
Liable to the infant for a failure of duty, the guardian, we apprehend, must, therefore, have become clothed with authority to prepare and manage the cause.
And if thus authorised to manage the cause, why it may be asked, should he be compelled to answer? Should it be done to create an additional responsibility?—by appearing, his accountability was complete:—Should it be to compel a denial of the allegations of the bill?—He might admit the charges:—Should it be to authorise a hearing of the cause? by consent the cause might be heard, or for a failure to answer, the bill might be taken for confessed, and in that attitude set for hearing.
It is also contended, that the cause should not have been heard without the service of process on the infant.
The necessity of such a service is not, however, perceived. The object of process is barely to compel an appearance. The infant must appear by guardian. His guar *169 dian regularly appointed is shown by the record to have actually appeared.
An entry-calling “to begin on a creek half a mile below the Cary lick, thence up he creek half a mile above the lick,” means, in both, a direct line.
Assuming, then, that the proceedings as to the infant have been regular, the question occurs upon the validity of the entry under which Calhoon, the complainant in the court below, asserts the superior equity. That entry is the last of the following made in the name of Josiah Watson.
“16th December, 1782, Josiah Watson enters 1200 acres “of land, on a branch of Brashears’s creek, beginning half “a mile below a lick, known by the name of Cany lick, and “running up the west side of the creek about half a mile “above the lick, then turning an east course across the creek “for quantity.”
“Also, 1200 acres, beginning at the north corner of the “west line of his last entry, and running up the west side “of the creek about one and a half mile, then turning an “east course across the creek for quantity.”
“Also, 650 acres, on Brashears’s creek, beginning at the “north corner of the west line of his last entry, and run-"ning a north course toward the dividing ridge between “Brashears’s creek and Drennon’s lick creek waters one “mile, then turning an east course for quantity.”
From these entries it will be readily, perceived that to ascertain the land contained in the latter, an adventurer would be led necessarily to search for the Cany lick, described by the former to be upon a branch of Brashears’s creek.
And in making the search, from the distance up the creek, called for in the two first entries, and the call in the latter to run north towards the dividing ridge, &c. he would naturally conclude that the ridge between Brasbeares’s creek and Drennan’s lick creek would be found not very remote from a point two miles up the creek from the lick. From the description thus contained in the entries, an adventurer, although not conducted with absolute precision to the Cany lick, would have but little hesitation as to the neighborhood where it might be found. The description would not, however, in itself, be sufficient to maintain the entry, but when taken in connection with the evidence of notoriety, we are inclined to the opinion that a subsequent locator might, with reasonable diligence, have ascertained with certainty the land contained in the location.
The evidence of the notoriety of Drennon’s lick creek, Brasheares’s creek, and the dividing ridge, is abundant; and *170 although there exists some contrariety of evidence in relation to the lick, the weight of it pretty satisfactorily proves the lick, contended for by the appellee, to have been generally known at the date of the entries.
Tho’ there be other cany licks (and so called) than one, the aptitude of the other objects called for to the one lick in exclusion of the others will direct the selection.
Wickliffe for appellant, Hardin for appellees.
Its notoriety is not only inferable from the number of witnesses who speak of if, but their evidence derives additional aid from the circumstance of many persons having camped there whilst on the expedition against the Indians, under Clarke, in 1781.
Some of the witnesses do, it is true, speak of other cany licks, but we suppose that no other is so well established, or applies so aptly to the description contained in the entry, as that recognized by the court below. The entry under which the appellee claims, therefore, we are of opinion, is sufficiently established.
But with respect to the mode of surveying the entries, we differ from the court below. The first entry in the chain of entries, should begin on the west bank of the creek one half mile below the lick, and from thence extended up the west side of the creek, with its meanders, to a point one half mile above the lick, on a direct line, and from thence an east course for the quantity.
The second entry should begin at the half mile point on the creek above the lick, and extend up the creek, with the meanders, on the west side, one mile and a half when reduced to a straight line, and thence east for quantity.
The third entry, being that under which the appellee claims, should begin at the termination of the line of the second entry up the creek, and from thence extended a north course one mile, and thence east so far as by extending south and west lines to the beginning will include the quantity.
For so much of the land now in contest as will be included in a survey of the 650 acres when thus surveyed, we are of opinion that the appellee has the better right.
The decree of the court below, however, as it gives to the appellee land which he will not be entitled to according to this opinion, must be reversed with cost, the cause remanded to the court, below, for such orders and decrees to be there made as may be conformable to the principles of this opinion.

Absent, Judge Rowan.